IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NANCY INGRAM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:18-00107-N |
| | ) | |
| NANCY A. BERRYHILL, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Ingram ("Ingram") brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Upon consideration of the parties' briefs (Docs. 16, 18) and those portions of the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument held November 27, 2018, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under § 1383(c)(3) and sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Doc. 26).

## I. *Background*

On August 28, 2015, Ingram filed an application for DIB, alleging disability beginning August 7, 2015.[2] After her applications were initially denied on December 2, 2015, Ingram requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review on December 10, 2015. A hearing was held with an ALJ on February 2, 2017. At the hearing, Ingram testified via a video feed. On June 1, 2017 the ALJ issued an unfavorable decision on Ingram's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 11).

The Commissioner's decision on Ingram's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on January 26, 2018. (R. 1 – 5). Ingram subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin*

3

*v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211,

4

exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks

---

1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

5

omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251,

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

7

1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Ingram met the applicable insured status requirements through December 31, 2019, and that she had not engaged in substantial gainful activity since the alleged disability onset date, August 7, 2015. (R. 13). At Step Two, the ALJ determined that Ingram had the following severe impairments: Rheumatoid Arthritis, Lumbar Radiculopathy, Rotator Cuff Tendonitis, bursitis and Gastroesophageal Reflux Disease. (R. 13). At Step Three, the ALJ found that Ingram did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 15).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the

9

regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Ingram had the RFC "to perform light work as defined in 20 CFR 404.1567(b)" subject to the following: Ingram "should be allowed to alternate sitting with standing or walking in 30 minute increments throughout the workday while remaining on task. She can occasionally push/pull foot controls with the left lower extremity. She can occasionally push/pull hand controls, bilaterally. She can occasionally reach overhead, bilaterally. She can frequently handle and finger, bilaterally. She can occasionally climb ramps and stairs. She can never climb ladders and scaffolds. She can frequently balance and occasionally stoop, kneel, crouch and crawl. She should never work in

environments of unprotected heights, or hazardous, moving mechanical parts." (R. 15-16). Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that Ingram was capable of performing past relevant work as a hospital office clerk. (R. 26 – 27).

## IV.  *Analysis*

**I.  The Administrative Law Judge did not err at Step 4 of the 5-Step Sequential Disability Evaluation**

The ALJ held that Ingram had the RFC to perform limited range light work as defined in 20 C.F.R. 404.1567(b), and therefore was found to not be disabled in accordance with the Sequential Evaluation of Disability. (R. 15-16). Ingram maintains that the ALJ erred in her decisions, after adopting the vocational expert's testimony concerning Ingram's ability to do past work as a hospital office clerk. At the hearing, the vocational expert testified that Ingram's past work could still be performed. Ingram argues in sum, that the decision lacks specific requisite findings and that the ALJ failed to address the combined impact of her impairments. (Doc. 16 at 7).

Ingram argues that "careful appraisal" is needed when determining a claimant's statements concerning the ability to perform past relevant work and the why the past work can no longer be performed. (Doc. 16 at 7). Ingram also maintains that the ALJ failed to obtain specific information about the physical requirements of her work as an hospital office clerk and the specific job functions that she could no longer perform. (Doc. 16 at 8-9).

The Commissioner maintains that the ALJ's decision is supported by substantive evidence, and that the ALJ found Ingram's "subjective complaints and allegations of limitations are not entirely consistent with the medical evidence." (Doc. 10 at 16). The ALJ noted that Ingram did suffer from some impairments, but the impairments "are not to the level of severity that would render her disabled or unable to perform work activity within the parameters of the residual functional capacity assessment." (R. 21).

Ingram argues that the ALJ's reasons to discredit her complaints were not supported by the evidence and that her medical history was undermined. Specifically, Ingram argues that although she reported her pain to be stable, she was still symptomatic. (Doc. 16 at 12). The Commissioner argues that the "ALJ is under no obligation to request a consultative examination, other additional evidence, when the record contains sufficient evidence allowing her to make an informed decision on the issue of disability." (Doc. 18 at 7).

The Commissioner asserts that the ALJ has a basic duty to develop a full and fair record, and only when the opposing party lacks counsel, is that duty heightened. The Commissioner maintains that "the ALJ's 'basic obligation' only rises to the level of a special duty when an unrepresented claimant who has not waived his right to counsel and is unfamiliar with hearing procedures appears before him." (Doc. 18 at 6). Ingram was represented by counsel throughout the process, therefore the ALJ's duty to develop a full and fair record did not rise to the level of a heightened duty and Ingram bore the burden of presenting

substantial evidence to support her claim.

The undersigned agrees that the record was sufficient and additional evidence was not needed to support the ALJ's decision. Therefore, the ALJ did not err in her evaluation at Step 4 of the 5-Step Sequential Disability Evaluation.

**II. The Administrative Law Judge did not err in her evaluation of Ms. Ingram's Statements regarding the Nature and Limiting Effects of her Symptoms.**

Ingram next maintains that the ALJ failed to consider the nature of her symptoms and that Ingram's, "statements regarding nature and limiting effects of her symptoms should have been accepted." (Doc. 16 at 10). The Eleventh Circuit's two-part standard for subjective symptoms requires that either "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) an objectively determined medical condition of such severity that can reasonably cause the pain." *Landry v. Heckler*, 782 F.2d 1551,1553 (11th Cir. 1986). The ALJ found that Ingram's symptoms and her complaints were not entirely consistent with the medical evidence.

The Commissioner maintains that the ALJ's decision considered multiple factors which included Ingram's "daily activities, her statements about the location, duration, frequency, and intensity of her symptoms, the type, dosage, effectiveness, and alleged side effects of her medications, and measures she used to alleviate her symptoms." (Doc. 18 at 5). At the hearing, Ingram testified:

> It is difficult for her to pick up coins off the table. She has some difficulty picking up cups, but no difficulty picking up saucers. She

13

has difficulty turning knobs. She can perform household chores a little at a time. She has to take frequent rest breaks because she get tired. Sweeping and mopping are hard, and she does them a little bit at a time. She cares for her personal needs on her own. She does not cook a lot. She prepares simple meals. She does her own grocery shopping. She can lift and carry about ten pounds. During the day, she will spend time in her craft room performing crafts. In her craft room, she will make hair bows and does light sewing. (Doc. 13 at 21).

The ALJ must clearly articulate adequate reasons for discrediting and rejecting a claimant's testimony concerning pain or other symptoms. When making the final decision regarding Ingram's disability, the ALJ noted that despite Ingram's subjective complaints of pain she maintained the capability to do crafts such as making hair bows and sewing.

During the hearing, Ingram testified that she is able to sit for 30 minutes at a time, that she can stand for 30 minutes at a time and that she could not walk long distances. Ingram also testified that she traveled to Florida to care for her ill mother during her alleged period of disability. Ingram lives alone and does not report any help maintaining the property. (R. 21). Ingram's testimony revealed that she was her own primary caretaker. The Commissioner maintains that while Ingram highlighted her subjective complaints, "the ALJ noted, physical examinations predating her lay off showed that Plaintiff's rheumatoid arthritis was 'doing well', she had a normal gait and a full range of motion, and she had intact motor strength and normal sensation. (Doc. 18 at 5).

Ingram contends that the ALJ presented reasons that were not supported by the evidence to discredit her complaints and undermined her medical history.

Although Ingram's record showed that her pain was stable, she claimed that she was still symptomatic. The Commissioner argues that substantial evidence cited within the medical records specifically maintaining that Ingram's physical examination showed no trigger points nor did the document reference significant upper extremity weakness. The Commissioner argues that the "ALJ is under no obligation to request a consultative examination or other additional evidence, when the record contains sufficient evidence allowing her to make an informed decision on the issue of disability. " (Doc. 18 at 7).

Ingram argues that the ALJ failed to address the combined impact of her impairments. However, the Commissioner maintains that all substantial factors were considered when the ALJ assessed Ingram's statements concerning her health, lifestyle and ability to do substantial gainful activity was and would be affected. The undersigned agrees that the ALJ did not err in her evaluation of Ingram's statements regarding her symptoms and that substantial evidence from Ingram's medical records and the hearing supports the ALJ's decision.

### III. The Administrative Law Judge's Residual Functional Capacity is Supported by the Substantial Evidence

Ingram next argues that the ALJ's RFC was not properly supported by substantial evidence regarding the physical requirements of her past work. Specifically, Ingram contends that the ALJ erred when she gave the state agency psychological consultant Dr. Harold Veits' opinion great weight. Ingram asserts that, Dr. Veits, "only considered the evidence from a psychological perspective

finding Ms. Ingram did not have a 'severe' mental impairment." Additionally, Ingram argues that the ALJ impermissibly substituted her non-medical administrative-opinion for that of a physicians in formulating the RFC.

The Commissioner points to Ingram's work history record, including walking, standing, and manipulative requirements. The ALJ referred to the vocational expert's testimony which concluded Ingram's "past work as light work." (Doc. 18 at 11).

The Commissioner argues that the "Plaintiff points to no medical evidence supporting her argument and ignores that cited by the ALJ," and she "fails to point to any medical evidence contradicting the ALJ's finding." (Doc. 18 at 9). Ingram's pain with shoulder motion was considered, however the Commissioner contends that she maintained full range of motion in all her joints. The Commissioner further asserts that "despite arguing that she could not perform handling or feeling for two thirds of a workday, Plaintiff testified that she spent time in her craft room during the day, where she makes bows and sews. She could prepare meals, and was able to live alone and maintain her household…while she reported difficulty holding curlers, she reported no difficulty with overhead activities such as washing or combing her own hair." (Doc. 18 at 9).

The record is sufficient to support the ALJ's findings and therefore Ingram's claim that the ALJ should have ordered a consultative examination or otherwise solicited medical opinion evidence is without merit. The ALJ made a decision based on the totality of the substantial evidence and Ingram fails to explicitly

16

explain how the ALJ lacked the proper information to identify the physical requirements of her past work.

IV. **The Administrative Law Judge did not err in the Duty to Fully and Fairly Develop the Record**

The Commissioner's Regulation states that the medical history evidence "must be complete and detailed enough to allow us to make a determination or decision about whether you are disabled." (20 CFR 404.1512(d), 404.1513). Ingram maintains that it is the ALJ's responsibility to ensure that the claimant receives a full and fair hearing. To ensure the hearing is full and fair, Ingram argues that the ALJ must "investigate the facts and develop the arguments both for, and against granting benefits." (Doc. 16 at 18). Ingram also asserts that it is the duty of the ALJ "to develop the medical record fully and fairly 'it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (Doc. 16 at 19).

Ingram contends that there was no medical or examining opinion concerning the expected symptom and functional restrictions resulting from her impairments. Ingram maintains:

> This District Court has consistently held that "[t]here must be substantial support in the record" for a finding that a claimant can perform competitive work and "that substantial evidence in support of such RFC determination necessarily must include an RFC assessment by a treating or examining physician" and "[w]ithout such evidence, all this Court perceives is mere conjecture and intuition by the ALJ." (Doc. 16 at 19).

Because there was no examining medical opinion, Ingram asserts that the ALJ

17

should have acquired additional evidence to make an informed decision. (Doc. 16 at 19). Ingram contends that the ALJ failed to thoroughly inquire and explore all of the relevant facts.

It is well settled that the ALJ has an obligation to develop a full and fair record. However, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Commissioner for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-1423 (11th Cir. 1997). Although it is the duty of the ALJ to investigate facts and evidence, Ingram fails to show additional evidence was needed, in order for the ALJ to make an informed decision or that she was prejudiced during the development of record. (Doc. 18 at 8). Therefore, the ALJ did not err in her duty in developing a full and fair record.

Accordingly, the Court **OVERRULES** Ingram's claims of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Ingram's applications for a period of disability, DIB, and SSI, made final by the Appeals Council's denial of review on January 26, 2018, is **AFFIRMED** under 42 U.S.C. § 1383(c)(3) and sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 12th day of June 2019.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**